Jerome B. E. Wolpp, J.
The facts of this case are as follows: The defendant, 25 years of age, the driver of one vehicle, collided with another vehicle at approximately 1:10 a.m., August 19,1972. As a result of the collision, the passenger in the other vehicle was killed; the driver seriously injured and the defendant suffered an injury to his neck and back. The Sheriff’s Department was summoned to the scene and an investigation as to the cause of the accident was begun. A Deputy Sheriff immediately went to the hospital where the defendant and the driver of the other car and the decedent had been removed. The deputy arrived at the hospital at approximately 2:15 a.m. The deputy went into the emergency room where the defendant was lying on a bed and in the presence of his father, asked him whether or not he would take a blood test to determine the alcoholic content of his blood. According to the deputy’s testimony, the defendant said he had no objections and his father, who is also a Justice of the Peace, said that he had no objections either for his son taking the blood test. A physician was instructed to withdraw the blood so that a blood sample could be analyzed. The deputy also instructed a doctor to take a blood sample from the other driver and also from the decedent. The defendant denies ever giving his consent to the blood test and denies having any conversation with the Deputy Sheriff. There was never *179 an arrest made in this case. After the defendant was discharged from the hospital, he was taken before a Justice of the Peace on the basis of an information by the father of the driver of the other vehicle and thence he was indicted by the Grand Jury for manslaughter in the second degree.
The question to be resolved here is whether or not a blood test and the results thereof can be introduced into evidence before a Grand Jury when no arrest has been made.
The court, after a review of the testimony at the hearing, finds that the defendant did give his consent to the blood alcohol test.
The United States Supreme Court in Schmerber v. California (384 U. S. 757), held that a defendant, even after the defendant’s refusal to take a blood test upon the advice of counsel, must submit to a blood test since it is not violative of any of his constitutional rights. The Court of Appeals in People v. Craft (28 N Y 2d 274), based its decision on the foregoing United. States Supreme Court case and held that the defendant is not entitled to the warnings under the Miranda decision, nor is he entitled to the presence of counsel at the time that the blood test is given.
Hence, the inverse aspect as we have in the present case where a consent has been given to the blood test, there is no need for the Miranda warnings, nor is there a need for an arrest.
“ On the other hand, both federal and state courts have usually held that it offers no protection against compulsion to submit to fingerprinting, photographing, or measurements, to write or speak for identification, to appear in court, to stand, to assume a stance, to walk, or to make a particular gesture.” (Schmerber v. California, 384 U. S. 757, 764, supra.)
The testimony of the laboratory technician as to the results of the blood test showing .23% of alcohol in the defendant’s blood was admissible before the Grand Jury.
The other argument of the defense is that the Grand Jury minutes do not contain any instructions or advice by the District Attorney relative to the blood test. It is averred by the defense that after the introduction of the results of the blood test that presumably the District Attorney must have stated a section or sections from the Vehicle and Traffic Law alluding to the fact that any blood alcohol test results over a .12% would automatically classify the defendant as being in an intoxicated state. Examination of the minutes does not reveal any instructions or advice by the District Attorney concerning sections of the Vehicle and Traffic Law. In fact, the sole contents of the Grand Jury minutes are the various questions and answers propounded to each witness. Subdivision 6 of CPU 190.25 requires that when a Dis *180 trict Attorney instructs a Grand Jury concerning the law either with respect to its duties or any matter before it, such instructions must be recorded in the minutes.
Since we have no testimony dehors the Grand Jury minutes as to whether any instructions were given, it becomes at this point, a hypothesis, as to whether any comment was made on the results of the blood test. Assuming for the moment, that a comment was made concerning the results, this in and of itself would not be enough to upset the indictment. CPL 190.65 requires that a Grand Jury must find that a legally sufficient or a prima facie case has been presented and have reasonable cause to believe that the defendant had committed the crime in order to indict.
According to the minutes of the Grand Jury, the Grand Jury had before it the testimony of various witnesses, including police in a patrol car that followed the defendant, who observed the defendant prior to the accident, who observed the accident itself, the results of an investigation, and the testimony which revealed that the defendant drove at an excessive speed leaving the Village of Seneca Falls, proceeded along a two-lane highway under a railroad overpass, up a hill which crested at a curve, and thence skidded off the paved portion of the highway in his lane approximately 268 feet and then back onto the highway and skidded sideways approximately 69 feet across the double white line and into the other lane into the vehicle proceeding easterly. The over-all distance traveled by the defendant was approximately six tenths of a mile from within the village limits. The road is plainly marked with a double white line approaching the hill and a curve warning sign posted midway on the hill. The defendant’s automobile collided with the other vehicle, a small truck, with such force that it threw it into the air. The testimony revealed the approximate speed of the defendant was 70 miles an hour both in the village and outside the village limits. The defendant was familiar with the area since he is a lifelong resident of the Village of Seneca Falls. The weather at that time was clear and the pavement of the road was dry.
The question as to whether the defendant’s unintended homicide was committed in a “ reckless ” manner could have been determined by the Grand Jury from the over-all evidence presented to them without the results of the blood test, and when considered in the light of People v. Haney (30 N Y 2d 328), could result in the indictment for manslaughter in the second degree. Any comment by the District Attorney relative to the blood test could be considered harmless in light of the over-all facts pre *181 sented to the Grand jury. The presumption of intoxication has since been eliminated from the Vehicle and Traffic Law. At the trial, of course, the defense will certainly have the opportunity to contradict and cross-examine witnesses and the court will have the opportunity to rule on the admissibility of any evidence after every single point has been probed in depth. The question of intoxication and its relationship to the cause of the accident must be proven at the trial.
‘ ‘ That a trial jury might not convict on this evidence is not our concern. The Legislature has specifically relegated the question of whether a trial jury would return a conviction on this evidence to the judgment of the Grand Jury”. (People v. Eckert, 2 N Y 2d 126, 129.)
Based on the law and the facts, the motion to suppress the blood test and to dismiss the indictment is denied in all respects.